Filed 1/14/14  P. v. Draper CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055952 |
| v. | (Super.Ct.No. FSB1101011) |
| DOMIYA DEVON DRAPER et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Affirmed as modified; reversed in part with directions.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant, Domiya Devon Draper.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant, Jamal Isiah Thomas.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

On February 18, 2011, defendants Domiya D. Draper and Jamal I. Thomas were observed going into a residence by members of an FBI Gang Impact Team. The house was under surveillance due to suspected drug activity at the location. Defendants left the residence together in a vehicle and were immediately stopped and searched. Draper was found with cocaine base in his pants, Thomas had marijuana and a large amount of cash in his pants, and another marijuana baggie was found on the dashboard. A search of the residence revealed over 128 grams of marijuana packaged in small baggies, a firearm and a large amount of money in a safe.

Thomas was convicted of possession for sale and transportation of marijuana, along with possession of a firearm by a felon. Draper was convicted of possession for sale and transportation of cocaine base, transportation of marijuana, and active participation in a criminal street gang. They jointly and individually contend as follows:

1.      Draper contends that insufficient evidence was presented to support his conviction under Penal Code section 186.22, subdivision (b)(1) that he committed the crimes for the benefit of and at the direction of a criminal street gang.

2

2. Thomas contends that his conviction of possession of marijuana for sale must be reversed because the trial court failed to give a unanimity instruction.[1]

3. Thomas contends that the trial court erred by failing to instruct the jury on the lesser included offense of simple possession of marijuana for the sale of marijuana charge.

4. Thomas and presumably Draper contend that their transportation of marijuana conviction must be reversed due to insufficient direct or circumstantial evidence presented that the substance was marijuana.

5. Thomas and Draper contend that their felony conviction of transportation of marijuana should be reduced to a misdemeanor because the marijuana they possessed weighed less than 28.5 grams.

6. Thomas contends that his sentence for a three-year enhancement under Health and Safety Code section 11370.2 should be vacated.

7. Thomas contends that the trial court abused its discretion by imposing a restitution and parole revocation fine of $4,200 pursuant to Penal Code section 1202.4, subdivision (b) and section 1202.45.

Respondent alleges that the trial court failed to impose or strike the special allegation pursuant to Health and Safety Code section 11370.2 for Draper, and failed to impose or strike the prior strike convictions under Penal Code section 667.5, subdivision

---

[1] Draper did not join in Thomas's arguments on appeal in the opening brief. We will consider that Draper has joined in Thomas's arguments that benefit him.

3

(b), for Thomas, and remand is required in order for the trial court to exercise its discretion. Respondent also recognizes that Draper's conviction pursuant to Penal Code section 186.22, subdivision (a), the active participation in a street gang, must be reversed due to the California Supreme Court's decision in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), which was filed after Draper filed his opening brief.

We reverse in part, vacate defendants' sentences, and remand for resentencing.

I

PROCEDURAL BACKGROUND

Defendants were tried together in front of the same jury. Draper was convicted of possession of cocaine base for sale (Health & Saf. Code, § 11351.5; count 1); sale or transportation of cocaine (Health & Saf. Code, § 11352, subd. (a); count 2); felony transportation of marijuana (§ 11360, subd. (a); count 4); and active participation in a criminal street gang (§ 186.22, subd. (a); count 6). It was further found true for counts 1, 2, and 4, that Draper committed the crimes for the benefit of, at the direction of or in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)).[2] In a bifurcated proceeding, after waiving his right to a jury trial, the trial court found two of the prior convictions alleged against him true pursuant to section 667.5, subdivision (b), and an enhancement pursuant to Health and Safety Code section 11370.2, subdivision (a) was found true. Draper received a total state prison term sentence of nine years.

---

**2** Draper was found not guilty of possession of marijuana for sale (Health & Saf. Code, § 11359; count 3).

4

Thomas represented himself at trial.  Thomas was found guilty of possession of marijuana for sale (Health & Saf. Code, § 11359; count 3), felony transportation of marijuana (Health & Saf. Code, § 11360, subd. (a); count 4) and possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1); count 5).  Thomas was found not guilty of count 1.  The jury was unable to reach a verdict on count 2, and the trial court declared a mistrial as to that count.  It was later dismissed.  In a bifurcated proceeding, after Thomas waived his right to a jury trial, the trial court found Thomas had suffered two prior convictions pursuant to section 667.5, subdivision (b).  Thomas was sentenced to state prison for a total term of seven years and eight months.

II

FACTUAL BACKGROUND

A. *People's Case-in-Chief*

1. *Evidence of charges*

San Bernardino Police Detective Marco Granado was assigned to the FBI Gang Impact Team (GIT).  The team was formed in order to identify and curtail gangs in San Bernardino who were engaged in criminal enterprises.  Detective Granado had over 500 hours of training in regards to the identification of various street drugs including marijuana, cocaine, methamphetamine, heroin and Ecstasy.  He had investigated over 500 cases involving marijuana.

On February 18, 2011, Detective Granado was near the area of Baseline and Elm in San Bernardino conducting surveillance of the area, which was known for its gang and

5

drug activity. He observed Thomas drive up to a residence located at 1568 North F Street in San Bernardino. Thomas walked into the residence carrying a large box. Sometime later, a smaller car drove up to the residence and Draper got out of the car. Draper also carried a cardboard box into the residence. They both exited the residence about 45 minutes later and got into Draper's car.

San Bernardino Police Officers Jonathan Manly and Kevin Silbaugh stopped Thomas and Draper. Thomas was in the passenger's seat, and Draper was in the driver's seat. They were both ordered out of the car.

Officer Silbaugh found cocaine base concealed in the back of Draper's pants. A search of Thomas revealed $2,813 cash in his pockets. Thomas also had a baggie of marijuana in his jacket pocket. Another baggie of what appeared to be marijuana was on the dashboard. The marijuana found on the dashboard was in plain view and could be reached by both Draper and Thomas.

A search of the F Street residence pursuant to a search warrant was then conducted. Recovered from the house was a digital scale, which was commonly used to weigh controlled substances for sale. A loaded handgun was found between the mattress and box spring in one of the bedrooms. An additional loaded magazine was found next to it. In the same bedroom, a safe was found containing over $2,000 in cash. Thomas had the key to the safe. Under the bed, marijuana was found in a plastic container. It was packaged in eight separate baggies, which was indicative of sales.

6

There was a surveillance camera on the porch which was commonly found at residences involved in drug activity in order to watch for police officers or persons looking to rob them. There was no drug paraphernalia found; a person who is using controlled substances rather than selling it would possess a pipe or other paraphernalia. A gas bill in Thomas's name was also found. No cocaine base was found in the residence.

Detective Granado weighed all of the marijuana found in the residence and during the traffic stop together. There were eight packages found in the residence that each weighed 13 grams. The two from the traffic stop were estimated to weight one-half gram. The total combined weight, with packaging, was 130 grams. The street value of the larger baggies of marijuana would be $200 for each of the baggies. The fact that each of the baggies was the same weight was indicative of sales. A criminalist tested three of eight plastic baggies containing a "dried green vegetable material." They tested positive for marijuana. The criminalist obtained a weight all together of 128.20 grams.

There was one individual bag of cocaine base. It weighed 22 grams with its packaging. It was broken up into four pieces weighing about 5 grams each. The street value was between $700 and $800. A presumptive test conducted by Detective Granado on the cocaine base came back as positive for cocaine. The criminalist tested the substance and it was positive for cocaine base. The cocaine base all together weighed 20.78 grams at the laboratory.

Detective Granado believed that both the marijuana and cocaine base were possessed for purposes of sales based on the money found, the amount of the controlled substances, the firearm and the scale. Detective Granado believed that defendants were working together to sell drugs. One of them was found with a large amount of money and the other with narcotics. Thomas had a previous felony conviction which prohibited him from possessing a firearm.

2.    *Gang evidence*[3]

San Bernardino County Sheriff's Deputy Dominic Vaca had contact with Draper on April 23, 2011. Deputy Vaca observed that Draper had tattoos that stated "BSC" and "109 ST" on his forearm. Draper told Deputy Vaca that "BSC" stood for Bacc Street Crips. They were also referred to as 109th Street. BSC was a gang whose territory was in Los Angeles. Draper admitted being a member. Draper told Deputy Vaca that he was known as "Dough Boy." Draper never told him that he was no longer a member.

San Bernardino Police Officer Jason Heilman was assigned to the gang unit. Officer Heilman had worked with San Bernardino and Los Angeles based gangs.

Officer Heilman explained that a gang was a group of three or more individuals who share a common sign or symbol and whose members engage in criminal activity. The primary purpose of the gang was to engage in criminal activity. He had contacted members of the BSC. He had patrolled in their territory in Los Angeles with Los Angeles Police Officers. The most common tattoo that a member would have was

---

[3]    The jury was admonished this evidence only applied to Draper.

"BSC" and "109" for 109th Street which runs through their territory. BSC had over 50 documented members.

BSC did not have a specific territory in San Bernardino. The primary criminal activity of the BSC is narcotics sales, weapons possession, assault and robbery. BSC narcotics sales were not limited to Los Angeles. Officer Heilman had arrested multiple members of BSC in San Bernardino who were involved in narcotics sales. By moving some of the narcotics sales to San Bernardino, the gang had less competition than in Los Angeles and could find new customers.

A gang card was completed for Draper in October 2005. On his gang card, it listed him as self-admitting that he was a member of BSC and based on his BSC and 109 ST tattoos. He told the officer who filled out the card that he was known as Dough Boy. Draper was contacted in the area of 16th Street and Sierra Way in San Bernardino.

Deputy Heilman indicated that classification cards for the jail were completed for each inmate to identify the inmate, their crimes and their gang affiliation. In his experience, an inmate would not lie on a classification card because he did not want to be housed with rival gang members. On his classification form for this case, Draper self-admitted as being a BSC member.

Deputy Heilman had spoken with a BSC member named John Lee. Deputy Heilman asked Lee if he knew Dough Boy and Lee responded that he knew him. Lee was aware that Dough Boy was in custody. Lee had been convicted of narcotics sales in 1996.

9

In January 2011, Draper was contacted by law enforcement in the Watts area within the BSC territory. Draper was with another BSC member.

Deputy Heilman indicated that there was a pattern of BSC members moving to San Bernardino and being arrested for narcotics crimes. Another BSC gang member was convicted of sales of cocaine base and methamphetamine in 2004. In 2009, he was convicted of possession of PCP for sale. Also in 2009, a different BSC member was convicted of the sale of methamphetamine. A third BSC member was convicted of the sale of methamphetamine in 2007. Draper himself was convicted of possession of a controlled substance for sale. All of the predicated crimes were committed within a one-half mile area in San Bernardino.

Deputy Heilman believed that Draper was a current, active member based on his conversation with Lee, his self admission and his tattoos. It was Deputy Heilman's opinion that the crime was committed on behalf of the BSC gang. He based it on the history of BSC members coming to San Bernardino from Los Angeles to sell drugs. It was common for gangs to want to expand. It was also to make money for the gang. The money would help to recruit more members.

B.    *Defense*

Thomas presented the testimony of his father, John Thomas. John lived at the F Street residence with his wife, his daughter, and three of his grandchildren. John was very sick with cancer and he paid Thomas to take care of him. Thomas also had a business selling ice cream, candy and toys. John claimed the marijuana seized in the

10

residence belonged to him. He took it for the pain he was experiencing from cancer and due to a traffic accident. John did not know where all of the money came from that was found in the house but thought it belonged to everyone in the house. Thomas's sister slept in the room where the safe and gun were found. John did not know who owned the firearm.

John bought the marijuana from someone on the street. He paid $50 for the marijuana. He broke it up into smaller baggies. John did not have a medical marijuana card.

III

PENAL CODE SECTION 186.22, SUBDIVISIONS (a)

AND (b)(1) ENHANCEMENTS

Draper contends that the evidence did not support his conviction pursuant to section 186.22, subdivision (b)(1) that he committed the crimes for the benefit of or at the direction of a criminal street gang. Respondent submits that the evidence was sufficient to support the allegation, but concedes that Draper's conviction for a violation of Penal Code section 186.22, subdivision (a) should be reversed based on the recent California Supreme Court case, *Rodriguez, supra,* 55 Cal.4th 1125.

A.    *Standard of Review*

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- that is, evidence that is reasonable, credible, and of solid value - - from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The

11

standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

B.      *Penal Code section 186.22, subdivision (b)(1)*

To prove a gang enhancement allegation under section 186.22, subdivision (b)(1), the People must prove that the crime for which the defendant was convicted had been "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."

"In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing,

12

attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period.  [Citation]." (*People v. Gardeley* (1996) 14 Cal.4th 605, 617, italics omitted.)

There is no dispute that BSC was a criminal street gang.  It appears that defendant's contention is that although there was evidence he was a member of BSC, there was absolutely no evidence this crime was committed for the benefit of or to promote or assist the gang.

It is well-established that the allegation under section 186.22, subdivision (b)(1) requires that the crime must be gang related.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  A crime is not gang related simply because it is committed by gang members. (*Ibid*.)  However, where an expert opines that "particular criminal conduct benefited a gang by enhancing its reputation for viciousness[, this] can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22[, subdivision ](b)(1)." (*Id.* at p. 63.)  However, "specific intent to *benefit* the gang is not required.  What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members . . . .'" (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 [Fourth Dist., Div. Two].)  "It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation.  [Citation.]" (*In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196.)

In *Rodriguez, supra,* 55 Cal.4th 1125, the court distinguished the enhancement from the substantive gang crime embodied in section 186.22, subdivision (a), which will

be discussed, *post*. "Section 186.22[, subdivision ](a) and section 186.22[, subdivision ](b)(1) strike at different things. The enhancement under section 186.22[, subdivision ](b)(1) punishes gang-related conduct, i.e., felonies committed with the specific intent to benefit, further, or promote the gang. [Citation.] . . . [W]ith section 186.22[, subdivision ](a), the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony regardless of whether such felony was gang related. [Citation.]" (*Rodriguez,* at p. 1138.)

Here, Draper self admitted to being a member of BSC in 2005, and in April 2011. He had BSC tattoos. He also admitted as such when he was booked into jail. The evidence supports he was an active BSC member.

Although Draper was not with a BSC member when he committed the instant crime, it was not required that he be accompanied by fellow gang members in order to be guilty under subdivision (b)(1) of section 186.22. The gang expert testified that BSC had a pattern of Los Angeles members moving to San Bernardino to sell drugs. In fact, all of the predicate crimes were committed in a one-half mile area and all involved the sale of drugs. Although defendant had not been seen with another BSC member in San Bernardino, he was seen in BSC territory in Watts with another BSC member around the same time as the instant crimes. Further, a known BSC member was aware that Draper had been taken into custody.

The jury reasonably could conclude that Draper's narcotics sales promoted and benefitted the BSC gang in the San Bernardino area. As such, there is sufficient evidence to support the gang allegation under Penal Code section 186.22, subdivision (b)(1).

14

C.  *Penal Code section 186.22, subdivision (a)*

"The substantive offense defined in section 186.22[, subdivision ](a) has three elements.  Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive, is the first element of the substantive offense defined in section 186.22[, subdivision ](a).  The second element is 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and the third element is that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.'  [Citation.]" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

The California Supreme Court has held that the third element of the offense is not satisfied when a gang member commits a felony while acting alone.  (*Rodriguez, supra*, 55 Cal.4th at p. 1132.)  The word "members," as the Supreme Court explained, "is a plural noun." (*Ibid*.)  "Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct.  The plain meaning of section 186.22[, subdivision ](a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Ibid*.)  The felonious criminal conduct referred to in the statute must be committed "'by members of that gang.'" (*Id*. at p. 1131.)

There was no evidence presented that Thomas was a member of the BSC gang.  Moreover, no other participants that may have gang affiliation were implicated in the

crime. As such, we agree with respondent that Draper's section 186.22, subdivision (a) conviction must be reversed.

IV

UNANIMITY INSTRUCTION

Thomas contends the trial court should have given the jury a unanimity instruction (CALCRIM No. 3500[4]) on count 3 for the marijuana possession for purposes of sales charge because there was marijuana found in the house and the car. He insists that these two possessions were separated by time and place, and they were each subject to unique defenses.

"'It is fundamental that a criminal conviction requires a unanimous jury verdict [citations].'" (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850.) "When a defendant is charged with a single offense, but there is proof of several acts, any one of which could support a conviction, either the prosecution must select the specific act relied upon to prove the charge, or the jury must be instructed that all the jurors must agree that the defendant committed the same act or acts. [Citation.] When the prosecutor does not make an election, the trial court has a sua sponte duty to instruct the jury on unanimity. [Citation.]" (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418.)

---

[4] CALCRIM No. 3500 provides as follows: "The defendant is charged with ____ <*insert description of alleged offense* > [in Count ___] [sometime during the period of ___ to ____]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

16

During closing argument, the prosecutor advised the jurors, "And the marijuana that I'm talking about in Count 3 is the total marijuana, the one that was found in the vehicle and the one that was found in the house. It's the total amount of marijuana." The prosecutor argued that Draper saw the marijuana in the car. Thomas, who represented himself, argued the marijuana found in the car was not the same as the marijuana found in the residence, and presented evidence that the marijuana found in the house belonged to his father.

Based on the foregoing, the "prosecutor's statements and arguments were an election for jury unanimity purposes." (*People v. Mayer, supra,* 108 Cal.App.4th at p. 418.) The jury necessarily had to conclude Thomas possessed both the marijuana found in the house and the car in order to convict him in count 3.

Here, the criminalist stated that all of the marijuana in the baggies looked the same. The prosecutor elected to base the possession of marijuana for sale on both the evidence found in the house and the car. Such election clearly advised the jurors that it was the combined marijuana that supported his conviction in count 3. As such there was no error in failing to give a unanimity instruction.

V

LESSER INCLUDED OFFENSE OF SIMPLE POSSESSION OF MARIJUANA FOR

COUNT 3

Thomas contends the jury should have been given an instruction on the lesser included offense of simple possession of marijuana for count 3, the possession of

17

marijuana for purposes of sales charge. Thomas bases his argument on his claim that the jury could have concluded that Thomas was guilty of count 3 based on either his possession of the marijuana in the house, or on the marijuana in the car. We have rejected that the jury would distinguish between the marijuana found in the car and the residence and similarly reject that an instruction on simple possession was required.

A trial court in a criminal case has a duty to instruct on general principles of law applicable to the case. (*People v. Blair* (2005) 36 Cal.4th 686, 744.) This means the trial court must instruct the jury with "'""those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'"" (*People v. Valdez* (2004) 32 Cal.4th 73, 115.) "'""That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]"'"" [Citation.]" (*Ibid.*) The failure to instruct on a lesser included offense in noncapital cases is "at most, an error of California law alone" requiring reversal only when "an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*People v. Breverman* (1998) 19 Cal.4th 142, 165.)

There is authority that supports that simple possession of a controlled substance is a lesser included offense of possession for sale of the same controlled substance. (*People v. Oldham* (2000) 81 Cal.App.4th 1, 16.) Another court has concluded that simple possession is not a necessarily lesser included offense because possession of a controlled

18

substance requires an additional element that the amount must be a usable quantity which is not required for sales. (*People v. Peregrina-Larios* (1994) 22 Cal.App.4th 1522, 1524.)

We need not resolve this issue because here the uncontradicted evidence supported only that the greater offense of sales was shown by the evidence. We have disagreed with Thomas's position that the jury could have convicted him of possession of marijuana for purposes of sales based only on the small amount of marijuana found in the car. Based on all the evidence, there was over 128 to 130 grams of marijuana found. It was packaged in baggies indicative of sales. Other evidence established sales including the digital scale in the house and large amounts of cash found both in the safe and on Thomas's person.

Accordingly, there was an absence of evidence "a reasonable jury could find persuasive" that the marijuana was intended for Thomas's personal use and, thus, no error by the court in failing to sua sponte instruct on simple possession. (See *People v. Breverman, supra,* 19 Cal.4th at p. 162.)

VI

INSUFFICIENT EVIDENCE OF TRANSPORTATION OF MARIJUANA

Thomas, presumably joined by Draper, contend that the evidence was insufficient to support their conviction of transportation of marijuana conviction in count 4 because the "green-leafy substance" found in the car was never tested.

19

We set forth the standard of review for sufficiency of the evidence claims, *ante*. In order to be found guilty of transportation of marijuana, it must be proved that the substance possessed was in fact marijuana. (Health and Saf. Code, § 11360, subd. (a); RT 548.) The transportation of marijuana charge was based on the marijuana found in the car.

According to the laboratory report, three of the eight baggies submitted by Detective Granado were analyzed and confirmed to be marijuana. During cross examination, Detective Granado was asked, "Can you explain why the property control sheet has ten - - it makes reference to ten baggies of marijuana and the request for analysis form makes reference to eight?" Detective Granado responded, "In this case I have the ten and the two are smaller. One of the baggies that we recovered was open, and I merely placed the two smaller baggies in the large baggie so it wouldn't be by itself." The evidence established that the two smaller baggies found in the car were placed in one of the baggies that was found in the residence. The evidence does not support that the baggie was tested.

The criminalist explained that each item of narcotics evidence is not necessarily tested. She explained, "[t]ypically if the items look visually similar in each of the baggies, we'll randomly select one or two of the items."

"[T]he nature of a substance, like any other fact in a criminal case, may be proved by circumstantial evidence. [Citations.] It may be proved, for example, by evidence that the substance was a part of a larger quantity which was chemically analyzed [citations], by the expert opinion of the arresting officer [citation], and by the conduct of the

20

defendant indicating consciousness of guilt. [Citation.]" (*People v. Sonleitner* (1986) 183 Cal.App.3d 364, 369.)

Here, Officer Silbaugh found two small baggies of what he recognized as marijuana in Thomas's jacket and on the dashboard. Officer Silbaugh had training and experience in narcotics sales. Detective Granado recognized the substances as marijuana and had been involved in over 500 cases involving marijuana. Detective Granado also testified that the substances found in the car resembled the marijuana found in the house. Here, the criminalist testified that three of the plastic baggies were analyzed and tested positive for marijuana. She also testified this was done if all of the substances looked the same.

Based on the testimony of both Officer Silbaugh and Detective Granado, who had extensive experience in the recognition of marijuana, the jury could reasonably conclude that the substances found in the car were marijuana. Further, the portion of the substance tested was further evidence it was marijuana. There was substantial evidence presented to support that the substances found in the baggies in the car contained marijuana.

VII

REDUCTION OF FELONY POSSESSION OF MARIJUANA TO A MISDEMEANOR

Thomas and Draper contend that there was insufficient evidence presented to support their convictions of felonies in count 4 because they did not transport more than 28.5 grams of marijuana. Respondent concedes the error.

During discussion of the jury instructions, Thomas asked about CALCRIM No. 2361, the transportation of marijuana instruction, because the amount that the transportation charge was based on was less than 28 grams. The trial court agreed to modify the instruction. The jury was instructed that the defendants were "charged in count 4 with transporting 28.5 grams or less of marijuana, a controlled substance." It was additionally instructed, "[a]nd fifth, the marijuana was in a usable amount, but not more than 28.5 grams." At the time of sentencing, the trial court imposed sentence as follows: "For the sale and transportation of marijuana in violation of Health and Safety Code section 11360(a), a felony for the mid term - - not giving aggravated - - a mid term of three years as to - - as alleged in Count 4."

Health and Safety Code section 11360, subdivision (a) provides in pertinent part, ". . . every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any marijuana shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of two, three or four years." Subdivision (b) provides in pertinent part, ". . . every person

22

who gives away, offers to give away, transports, offers to transport, or attempts to transport not more than 28.5 grams of marijuana, other than concentrated cannabis, is guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars ($100)."

The transportation of marijuana charge was based on the two small baggies found in the car. Detective Granado estimated that the individual baggies weighed one-half gram each for a total of one gram. As such, the evidence only established a violation of Health and Safety Code section 11360, subdivision (b), a misdemeanor. We can reduce the charge to a misdemeanor on appeal. (Pen. Code, § 1260; *People v. Rivera* (2003) 114 Cal.App.4th 872, 879.) Since the trial court imposed a felony sentence on this charge as to Thomas, and made count 4 the principal term, we will vacate his entire sentence. We will also vacate Draper's sentence to give the trial court an opportunity to sentence Draper in light of this reduction.

### VIII

### THOMAS'S HEALTH AND SAFETY CODE SECTION 11370.2 ENHANCEMENT

Thomas's sentence included a consecutive three-year sentence for a violation of Health and Safety Code section 11370.2. However, since Thomas was found not guilty of the qualifying crimes for this enhancement to be applied, he argues he is not subject to the enhancement. Respondent concedes the error.

Health and Safety Code section 11370.2, subdivision (a) provides that any "person convicted of a violation of, or of a conspiracy to violate, Section 11351, 11351.5, or

23

11352" with certain prior drug convictions, shall receive an additional three-year enhancement. Here, Thomas was acquitted of count 1, the possession of cocaine base, and the transportation of cocaine base charge was dismissed when the jury could not reach a verdict on the charge. Accordingly, Thomas was not convicted of a qualifying offense. Moreover, the trial court never made a finding as to the enhancement. Since we have vacated the sentence, we advise the trial court at resentencing that such enhancement should not be imposed.

IX

RESTITUTION FINE

Thomas contends that the trial court erred by imposing a $4,200 restitution fine pursuant to Penal Code section 1202.4, and a stayed parole revocation fine pursuant to section 1202.45. Respondent agrees that the restitution fine must be recalculated.

At the time of sentencing, the trial court stated it was imposing a restitution fine of $4,200 pursuant to Penal Code section 1202.4, and the same amount as a parole revocation fine under section 1202.45, which was stayed.[5] The trial court did not provide its reasons for imposing the $4,200 amount but it was the amount suggested in the probation report.

Penal Code section 1202.4, which was in effect at the time Thomas committed his crimes, provided for a restitution fine that may be calculated as the product of $200

---

[5] The abstract of judgment erroneously states the restitution and parole revocation fines were imposed in the amount of $210.

24

multiplied by the years of imprisonment, multiplied by the number of felony convictions (*id.* at subd. (b)(2)), but the amount is "set at the discretion of the court" (*id.* at subd. (b)(1)), based on factors that include "the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered any losses as a result of the crime, and the number of victims involved in the crime" (*id.* at subd. (d)). (Former Pen. Code, § 1202.4.)

It appears that the trial court calculated the restitution fine under the formula provided in former Penal Code section 1202.4, subdivision (b)(2). Since we have vacated Thomas's sentence and are remanding for resentencing, the trial court should recalculate the restitution and parole revocation fines upon resentencing.


X

ADDITIONAL SENTENCING ERRORS

Respondent raises several sentencing errors committed by the trial court. Respondent first claims as to Draper, that the trial court had to impose the Health and Safety Code section 11370.2, subdivision (a) enhancement consecutively, rather than concurrent. Further, as to Thomas, the trial court had to impose or strike all of the section 667.5, subdivision (b) enhancements found true by the trial court.

The "failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal." (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391.) "Once the prior prison term is found true within the meaning of

section 667.5[, subdivision ](b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken.  [Citations.]"  (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.)  The trial court found two prior prison term enhancements true against Thomas but only imposed a one-year sentence on one of the prior convictions.

Moreover, the trial court retains the authority to strike the three-year term Health and Safety Code section 11370.2, subdivision (a) enhancements.  (*People v. Thomas* (2013) 214 Cal.App.4th 636, 640.)  However, once a trial court decides to impose the enhancement, it must be run consecutive to any other sentence.  (Health & Saf. Code, § 11370, subd. (a).)  The trial court ordered that the Health and Safety Code section 11370.2, subdivision (a) enhancement for Draper run concurrent to count 1.

Both of the sentences have been vacated and the case is being remanded for resentencing.  Upon resentencing, the trial court shall either impose a consecutive three-year sentence or strike the Health and Safety Code section 11370.2, subdivision (a) enhancement for Draper.  In addition, the trial court shall impose or strike the Penal Code section 667.5, subdivision (b) enhancements for Thomas.  We remind the trial court that it is required to provide a statement of reasons for using its discretion to strike a mandatory enhancement.  (Pen.Code, § 1385, subd. (a); *People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1589.)

XI

## DISPOSITION

Defendants' convictions in count 4 are modified to reduce the felony offenses of transportation of marijuana to misdemeanor transportation of marijuana in violation of Health and Safety Code section 11360, subdivision (b).  Draper's conviction for active gang participation pursuant to Penal Code section 186.22, subdivision (a) is reversed.

Defendants' sentences are vacated and the matter is remanded for resentencing in accordance with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

WE CONCUR

RAMIREZ
P. J.

CODRINGTON
J.