[No. B157502. Second Dist., Div. Five. Apr. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MAYER, Defendant and Appellant.

## COUNSEL

Glen T. Jonas for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARMSTRONG, J.**—The City of South Gate requires a candidate for the city council to be a registered voter of the city for 29 days before the election. One can be a registered voter of the city only if one is a resident of the city. Appellant badly wanted to be an elected member of the South Gate City Council. He was not, however, a resident of the city. To avoid the residency requirement, appellant arranged to use the address of a person who lived in the city as his mailing address. He signed under penalty of perjury papers required to qualify him as a candidate in three elections, listing his mailing address in the city as his residence. Appellant, as justification for his actions, testified that he believed that "residence" had a meaning for politicians different from the statutory meaning of that word.

Appellant was convicted, following a jury trial, of three counts of submitting a false nomination paper or declaration of candidacy in violation of Elections Code section 18203, three counts of perjury in violation of Penal Code section 118, and one count of solicitation of perjury in violation of Penal Code section 653f, subdivision (a).[1] The trial court suspended sentencing and placed appellant on five years' formal probation, on the condition that he serve 180 days of house arrest with electronic monitoring.

Appellant appeals from the judgment of conviction, contending that there is insufficient evidence to support the three counts of violating section 18203, and that the trial court erred in refusing to give a jury instruction on mistake of fact, failing to give a unanimity instruction on the solicitation charge, and excluding expert testimony on the meaning of the word "residence." Appellant further contends that there is insufficient evidence to support the solicitation conviction, that section 2026 violates the equal protection clause of the United States and California Constitutions and that the trial court erred in instructing the jury pursuant to section 2026. We affirm the judgment of conviction.

*Facts*

Candidates for the South Gate City Council must be residents of the City of South Gate.

On December 4, 1998, appellant filed a nomination paper to run for the South Gate City Council. On that date, he took an oath under penalty of perjury administered by the city clerk certifying that everything in his nomination papers was correct. Appellant signed the paper as a registered voter who was nominating the candidate and as the circulator of the nomination paper. In both places he listed his address as 4220 Southern Ave., South Gate. He added "#A" to his address as the circulator.

Also on December 4, 1998, appellant filed a voter registration form. In box two of the form, which stated "Address, where you live," appellant wrote 4220 Southern Ave., South Gate. Box four of the form states "Address, where you get your mail," and instructed the applicant to fill out the box if the address where he received his mail was different from the address where he lived. Appellant left box four blank. He signed the form under penalty of perjury.

On August 16, 2000, appellant again filed a nomination paper to run for the South Gate City Council. On that date, he took an oath under penalty of

---

[1]All further statutory references are to the Elections Code unless otherwise specified.

perjury administered by the city clerk certifying that everything in his nomination papers was correct. Appellant signed the paper as a registered voter who was nominating the candidate and as the circulator of the nomination paper. In both places he listed his address as 4220 Southern Ave., South Gate.

In October 2000, appellant signed a driver's license application under penalty of perjury showing that he resided at the Southern Avenue address.

On October 26, 2000, appellant filed a declaration, dated October 18, 2000, in Los Angeles Superior Court in connection with a civil suit in which he was named as a real party in interest. In that declaration, appellant stated that he had resided at the Southern Avenue address since November 1998, used the bedroom he rented there for sleeping, and paid a monthly rent.

On December 8, 2000, appellant again filed a nomination paper to run for the South Gate City Council. Appellant signed the paper as a registered voter who was nominating the candidate and as the circulator of the nomination paper. In both places he listed his address as 4220 Southern Ave., South Gate.

Appellant did not in fact live at the Southern Avenue address. Willebaldo Arroyo and his wife lived there. Appellant had no bedroom there, never slept there and kept no personal belongings there. He did not hold meetings there. He did not have a key to the apartment or its mailbox. Appellant did not pay rent for the apartment.

In 1998, Arroyo's brother-in-law told Arroyo that appellant wanted to use Arroyo's apartment. Appellant then went to the apartment and asked Arroyo to let him use Arroyo's mailbox and receive mail in South Gate. Appellant gave Arroyo some money and promised that if appellant achieved his purposes, Arroyo would never lack work. Appellant told Arroyo to tell anyone who came to the apartment building looking for appellant that appellant lived there. Arroyo agreed.

On October 1, 2000, appellant took Arroyo to a lawyer's office and asked Arroyo to sign a declaration under penalty of perjury. Arroyo signed the document. Among other things, the document stated that appellant resided at the Southern Avenue address and that he had paid rent to Arroyo for about two years. At trial, Arroyo testified that he could not read English and did not understand what the declaration said.

Appellant was charged with three counts of violating section 18203 for the three nomination papers he filed showing the Southern Avenue address as

his residence and three counts of perjury for falsely giving the Southern Avenue address on his 1998 voter registration form, 2000 driver's license application and October 18, 2000 declaration filed in the civil suit. He was also charged with soliciting perjury in connection with that declaration which was signed by Arroyo.

At trial, appellant testified that based on his experience in politics, he had learned that "In the real political world, when you established a domicile or residence, you established it with the purpose of spending x-amount of time there, using it as a—your political address, but never with the intent of permanently being there. And that's what I did . . . ."

Appellant acknowledged that he never slept or stayed overnight at the Southern Avenue address and that he did not have a key to the apartment or keep clothes or belongings there. He testified that his agreement with Arroyo was that for $250 per month, he would use the apartment, carport and address for political purposes, and would use Arroyo's address to register to vote. Appellant testified that he did conduct political activities in Arroyo's carport.

Appellant claimed that he never looked up the definition of residence or domicile in the Election Code. He did not believe that he had to sleep or live at a place in order to call it his residence. He had no intent to defraud or deceive anyone about where he actually lived when he gave the Southern Avenue address as his residence.

Appellant testified that he believed that the word "live" had a political definition separate from its ordinary meaning. For political purposes, where he "lives" meant where he spent time. Similarly, "domicile," "residence," and "home" meant places where he spent time. He based this understanding on the practices which he had observed in the political world.

Appellant believed that he was entitled to use this same "political" standard of residence on his voter registration form, and apparently on his driver's license as well.

Appellant testified that he did not tell the lawyers who prepared his October 18, 2000 declaration that he slept at the Southern Avenue address and that the statement in the declaration that he did sleep there was due to a mistake or misunderstanding.

Appellant did not offer any testimony relating to Arroyo's declaration.

*Discussion*

1. *Mistake of fact—definition of "residence"*

██ Appellant contends he was entitled to have the jury instructed with CALJIC No. 4.35 concerning the defense of mistake of fact because he operated under a mistaken definition of "residence."[2] We see no error.

CALJIC No. 4.35 provides: "An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus, a person is not guilty of a crime if [he] [she] commits an act or omits to act under an actual [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make the act or omission lawful."

Appellant contends that he was entitled to this instruction for all seven counts. Preliminarily we note that the record establishes that appellant received a mistake-of-fact instruction for the three perjury charges. The jury was instructed that a statement made "under an actual mistake and in a belief that it is true is not perjury even though the statement is false." He has offered no explanation of how a mistake-of-fact defense would apply to the charge that he solicited Arroyo to commit perjury. His only defense to this charge was argument by his counsel that he did not ask Arroyo to lie.

As to the three counts of violations of section 18203, appellant contends that he was entitled to a mistake-of-fact instruction because, if "he actually believed that his definition was correct, then he is not guilty of any of the charges." Appellant's "mistake" was his belief that the law did not require him to sleep in South Gate. This is a mistake of law, not one of fact. A mistake of fact would exist if, for example, appellant honestly but mistakenly believed that the place where he slept was in the City of South Gate.

Appellant contends that denying him a mistake-of-fact defense would turn the crimes into strict liability offenses because it would hold him to the legal definition of the term "residence" even though he was unaware of that

---

[2] A "residence" instruction, which adopts verbatim the language of section 349, was given the jury. It provides:

"(a) 'Residence' for voting purposes means a person's domicile.

"(b) The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which whenever he or she is absent, the person has the intention of returning. At a given time, a person may have only one domicile.

"(c) The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. At a given time, a person may have more than residence."

definition. This contention is, in fact, a contention that ignorance of the law is an excuse for the violation of a law. It is not.

■ " 'It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof. Of course it is based on a fiction, because no man can know all the law, but it is a maxim which the law itself does not permit any one to gainsay . . . . The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement. If a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result.' [Citations.]" (*People v. Snyder* (1982) 32 Cal.3d 590, 593-594 [186 Cal.Rptr. 485, 652 P.2d 42].)

■ Further, even assuming for the sake of argument that appellant was entitled to a mistake-of-fact instruction, the failure to give such an instruction was harmless.

Appellant was charged with perjury in connection with his use of the Southern Avenue address on his voter registration form, and the jury was instructed on the mistake-of-fact defense to perjury. Appellant testified that he believed that the political definition of residence applied to his voter registration form, and that the listing of the Southern Avenue address as his residence on that form was permissible. The jury nevertheless convicted him of perjury on the voter registration form. If the jury did not believe his defense on the perjury count, we see no probability or possibility that they would have believed the identical defense to the Elections Code counts.

At trial, appellant took the position that he never claimed to have slept at the South Gate address. This would be consistent with his claim that he believed that he only had to receive mail at that address for it to qualify as his political residence. However, there was very strong evidence that appellant submitted or caused to be submitted declarations by himself and Arroyo falsely claiming that he did sleep at the South Gate address and pay rent and utilities there. This is not consistent with a good faith belief that a mail drop qualified as a political residence. In light of this evidence, there is no probability or possibility that the jury believed that appellant honestly believed that the South Gate address was his political residence, and would have acquitted him of the Election Code charges if given a mistake-of-fact instruction. "No judgment shall be set aside . . . on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of his resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) We have examined the entire case and are satisfied that there was no miscarriage of justice.

## 2. *"Expert" testimony—meaning of "residence" in the political arena*

■ Appellant contends that the trial court abused its discretion in refusing to allow Mervyn Dymally to testify, as a political expert, that the meaning of the term "residence" in the "political arena" had a different meaning from that word used in the statutes. Appellant theorized that such testimony would corroborate his claim that "residence" had a special meaning for politicians, including himself.

We are not prepared to accept the proposition that "residence" has one meaning for elected officeholders and candidates for election to public office, but a different and universally recognized meaning for all other persons. The best evidence of the meaning of politicians' understanding of "residence" is set forth in section 349, which was adopted by "politicians" in the Legislature. Section 349 does not exempt politicians from its requirements. Expert opinion testimony on this issue was properly excluded.

However, if the definition of residence was a matter for expert opinion, we conclude that the trial court did not abuse its discretion in excluding Mr. Dymally's testimony.

At a hearing held pursuant to Evidence Code section 402, Mr. Dymally testified that he had served in the California Assembly and Senate between 1966 and 1974, as California's Lieutenant Governor from 1974 to 1978 and as a member of the United States Congress from 1981 through 1992.

He testified that the word "residence" is an ambiguous term which in the world of politicians means something different than the place where one actually lives. In his opinion, a politician could claim an address as a residence even though he lived 24 hours a day, seven days a week at another location. He expressed the opinion that a place where a politician only received mail, but did not have a key to, or a lease for, where the politician had never spent a night, could nevertheless be the politician's residence if someone answered the door at that place when the politician knocked.

Mr. Dymally himself had never claimed an above described arrangement as a residence. He did not know anyone who picked a residence at random from the telephone book or by driving down the street. He did not know anyone who claimed a post office box or a mail drop as a residence. He did not know anyone who had claimed a public place such as a courtroom as a residence. He himself had never done any of those things.

Mr. Dymally testified that after 26 years in politics he knew of only one instance of a person claiming as a residence a place where it appeared he did

not actually live. That instance involved an opponent of his who claimed a real estate office as his residence. Mr. Dymally challenged his opponent's residency, but the court concluded that the opponent lived in the office. His frequent references to unidentified court cases on this subject showed that other politicians likewise had challenged their opponent's claim of residency. Mr. Dymally did not testify that any other politician had conveyed to him an opinion that a residence could mean whatever a politician decided it meant.

The trial court refused to allow this testimony to be offered at trial in part because "Mr. Dymally testified that he can't speak for others, he was just speaking for himself." The trial court concluded that Mr. Dymally's testimony did not show that "residence" had a special meaning for politicians. We agree with the trial court that Mr. Dymally was not qualified to testify as an expert on the meaning of "residence" in the political arena. (Evid. Code, § 801, subd. (b).)

We note that Mr. Dymally's profferred testimony was more helpful to the prosecution than to appellant in several critical areas. For example, Mr. Dymally, in response to a question from the court, agreed that "Where a residence is imposed as a requirement for holding office, . . . voters [are] entitled to a truthful statement from a candidate on where a candidate actually lived at the time of declaration of candidacy." He testified that a person is expected to obey laws even though he is aware of others violating them. He also testified that before he ran for office he would consult with somebody about election residency laws to make sure he complied with them. Appellant admitted that he had not exercised such caution prior to running for the city council.

### 3. Sufficiency of the evidence—false nomination papers

Article 3 of division 10 of the Elections Code is entitled "Nomination of Candidates." The chapter, containing sections 10220 through 10228 and 10229, specifies the manner in which voters can nominate candidates. A nomination paper is a document containing the signatures and addresses of voters who propose a candidate for a political office. (§ 10220.) Section 10222 provides: "Every nomination paper shall have annexed an affidavit of the person who circulated it, to the effect that he or she saw written all the signatures appended thereto, and knows that they are the signatures of the persons whose names they purport to be." A verified statement of the candidate's acceptance of the nomination is also required. (§ 10223.) The official form for this three part document is set forth in section 10226. A sheet of paper labeled "nomination paper" bearing the names and addresses of residents who support a candidate does not become a legally effective

nomination paper until it is filed with the appropriate clerk and the clerk confirms the names and addresses of signatories. The paper cannot be filed with the clerk without the declaration of the circulator. (§ 10222.)

Section 18203 provides: "Any person who files or submits for filing a nomination paper or declaration of candidacy knowing that it or *any part of it* has been made falsely is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the state prison for 16 months or two or three years or by both the fine and imprisonment." (Italics added.)

As discussed above, appellant was not a resident of the City of South Gate at the times he submitted his nomination papers to the city clerk. However, he signed the nomination papers on his own behalf and on each listed his address at 4220 Southern Ave., South Gate. He signed a declaration of circulator under penalty of perjury listing his address at the Southern Avenue address. The declaration stated in part that he "saw the signatures on the section of the nominating paper being written." The declaration of circulator was annexed to the nomination paper. Each of the three nomination papers consisted of five pages and each was admitted into evidence as a separate document. The crime of filing a false declaration of candidacy was committed as each completed nomination paper was filed with the clerk.

■ Appellant contends that he is not guilty of filing false nomination papers because the use of the word "annexed" in section 10222 shows that the declaration of the circulator is *not* a part of a nomination paper, but rather something that is attached to it. Thus, he contends that he was wrongfully convicted for violating section 18203 because he filed false declarations of circulator, not the false "nomination papers" or declarations of candidacy as he was charged with filing. We reach the opposite conclusion.

In our view, all documents required to be filed with the clerk as provided in section 10222 comprise the nominating papers. Common meanings of "annex" are "unite," "make an integral part of," and "incorporate." (Black's Law Dict. (6th ed. 1990) p. 88; Webster's Collegiate Dict. on-line <http://www.m-w.com> [as of Apr. 30, 2003].) Thus, the ordinary meaning of the word "annex" shows that the declaration of the circulator is incorporated in and becomes a part of the nomination papers, when, after all the voter signatures are collected, the circulator completes his declaration concerning those signatures and joins it to the document containing those signatures.[3]

---

[3]We note that various sample nomination papers provided by the Elections Code show one form document with a section labeled "Circulator's Affidavit." (§§ 8041, 8409, 10226.) Two

### 4. *Sufficiency of the evidence—solicitation of perjury*

Appellant contends that there is insufficient evidence that he solicited Arroyo to commit perjury. In reviewing the sufficiency of the evidence, "courts apply the 'substantial evidence' test. Under this standard, the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261 [48 Cal.Rptr.2d 135, 906 P.2d 1290], italics omitted.)

Appellant reasons that he could not be guilty of soliciting perjury because Arroyo testified that he did not read the declaration, it was in English, a language he did not understand, and no one interpreted the document for him. Appellant admits that he presented the false declaration to Arroyo and asked him to sign it. He also admits that Arroyo signed the false declaration. Appellant spoke to Arroyo in Spanish when he asked Arroyo to sign the declaration and Arroyo spoke to appellant in the same language. Arroyo signed the declaration at appellant's lawyer's office at the request of appellant and his lawyer. Appellant, who knew the declaration was perjurious, filed in it a civil action pending in the superior court.

The only testimony on appellant's knowledge of Arroyo's linguistic skills was Arroyo's testimony that he spoke Spanish to appellant. This does not establish that appellant believed that Arroyo spoke and read only Spanish. Appellant himself offered no such testimony at trial.

The evidence, viewed in the light most favorable to the judgment, shows that appellant asked Arroyo to sign a declaration containing at least one statement that appellant and Arroyo both knew was false. This was solicitation of perjury.

Although the actual commission of perjury is not a requirement of the offense of solicitation of perjury, the declaration and Arroyo's acknowledgement that he signed it and that it contained false statements, would be sufficient to support a conviction for perjury. Arroyo's claim that he could not understand English and could not read the declaration would not render that evidence insufficient. (*People v. Todd* (1935) 9 Cal.App.2d 237, 423-244 [49 P.2d 611] [rejecting claim that evidence was insufficient to show that defendant knowingly swore falsely to an affidavit because defendant

of the three nomination papers filed by appellant contained the heading "Declaration of Circulator" on the last page of signatures nominating appellant.

testified that she accidentally signed affidavits meant for another instead of those meant for her].)

### 5. *Unanimity instruction*

Appellant contends that there were two acts which could have supported the charge of solicitation of perjury, and that the trial court erred in failing to instruct the jury, sua sponte, that it was required to unanimously agree on which act constituted that offense. We see no error.

When a defendant is charged with a single offense, but there is proof of several acts, any one of which could support a conviction, either the prosecution must select the specific act relied upon to prove the charge, or the jury must be instructed that all the jurors must agree that the defendant committed the same act or acts. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850 [42 Cal.Rptr.2d 798].) When the prosecutor does not make an election, the trial court has a sua sponte duty to instruct the jury on unanimity. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 [70 Cal.Rptr.2d 878].)

Appellant contends, correctly, that there was evidence that he solicited perjury from Arroyo on October 1, 2000, in connection with a written declaration and on October 25, 2000, in connection with a deposition.

Since count 7 of the indictment charged appellant with soliciting perjury from Arroyo on October 1, 2000, we do not believe that the October 25, 2000 act could support a conviction for count 7. The jury's attention was directed to the date of the charged offense by the jury instructions and verdict forms, pursuant to which it was to find appellant guilty or not guilty of soliciting *as charged* in count 7 of the indictment. Thus, the jury was told to determine whether or not appellant solicited perjury on October 1, 2000.

Further, the prosecutor made it clear that she was relying on the October 1, 2000, declaration as the act to support the soliciting charge. In her opening argument, she gave the basis of the seven charges. She mentioned the false declaration by Arroyo, but did not refer to his deposition. The district attorney's investigator testified that Arroyo's declaration was the basis of count 7. The prosecutor referred only to Arroyo's declaration in her closing argument concerning count 7.

The prosecutor's statements and arguments were an election for jury unanimity purposes. (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455

[121 Cal.Rptr.2d 627]; *People v. Diaz* (1987) 195 Cal.App.3d 1375, 1382-1383 [241 Cal.Rptr. 366].)

6. *Equal protection*

■ Appellant contends that section 2026 violates equal protection because it provides immunity from criminal prosecution for false residency statements to incumbent politicians but not to challengers. Appellant has misunderstood the purpose and effect of section 2026.

"The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. *At a given time, a person may have more than one residence.*" (§ 349, subd. (c), italics added.) "The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning. *At a given time, a person may have only one domicile.*" (§ 349, subd. (b), italics added.) For voting purposes, the term "residence" means a person's domicile. (§ 349, subd. (a).)

While many people may choose to have more than one residence, incumbent legislators may be required by their official duties to have two residences, one in Sacramento and one in their home district.

Section 2026 provides: "The domicile of a Member of the Legislature or a Representative in the Congress of the United States shall be conclusively presumed to be at the residence address indicated on that person's currently filed affidavit of registration."

When section 2026 is read in light of section 349 and the practical requirements of incumbent legislators, it is properly understood to provide that incumbent legislators are conclusively presumed to have the intent to remain in or return to the residence which they list on their sworn statement of voter registration. Thus, section 2026 permits incumbent legislators to elect their domicile by filing a sworn voter registration form.

Nothing in section 2026 changes the requirements of section 349, or prevents any citizen of the State of California who has multiple residences from deciding in which of those residences he intends to remain and to which he intends to return when absent. Section 2026 eliminates any controversy regarding the location of an incumbent legislator's domicile caused by his having two residences. There is simply nothing in section 2026 which raises an equal protection question.

## 7. *Section 2026 jury instruction*

Appellant contends that the trial court erred in refusing to give the jury an instruction which contained the text of section 2026. We see no error.

Appellant contends that he was entitled to this instruction because it was from observing the behavior of those incumbent legislators protected by section 2026 that appellant acquired his mistaken belief that a residence is anywhere that a person registers and receives mail. His ignorance of the provisions of section 2026 prevented him from knowing that section 2026 did not apply to him as well as the incumbent legislators.

The charges against appellant do not stem from allegedly false statements over which of appellant's residences was his domicile. They arise from the fact that he did not have a residence, that is a place of habitation, in the city of South Gate. Even if section 2026 applied to appellant, it would do him no good in this case.

### Disposition

The judgment is affirmed.

Turner, P. J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 23, 2003. Brown, J., did not participate therein.