Filed 6/30/15  P. v. Galdamez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C076249 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF133752) |
| v. | |
| ELBIN GALDAMEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Elbin Galdamez of assault with a deadly weapon and resisting, obstructing or delaying a peace officer, a misdemeanor.  In connection with the assault with a deadly weapon, the jury found that defendant inflicted great bodily injury.

For the assault with a deadly weapon, the trial court sentenced defendant to state prison for the midterm of three years plus a consecutive three-year term for the great bodily injury enhancement.  For resisting, obstructing or delaying a peace officer the court sentenced defendant to a concurrent term of 30 days in jail.

Defendant appeals.  He raises issues related only to his misdemeanor conviction for resisting, obstructing or delaying a peace officer.  He contends:  (1) insufficient

1

evidence supports his conviction, and (2) the trial court erred in failing to give the unanimity instruction. Concluding sufficient evidence supports defendant's misdemeanor conviction, and that the unanimity instruction was not required, we will affirm the judgment.

## FACTUAL BACKGROUND

About 5:00 p.m. on August 17, 2013, defendant, carrying a five-inch-long knife, approached Salvador Avila Soto from behind. Soto heard footsteps, saw defendant, and, believing defendant was planning to stab him in the back, Soto turned and put up his arm. Defendant stabbed Soto in the arm and then tried to stab him in the stomach. In trying to block the knife, Soto was stabbed several times on his arms.

After stabbing Soto, defendant fled to the room he rented in the backyard of Gabriel Pulido's home located at 420 Washington Avenue. Pulido saw defendant walking from the front of the house into the backyard toward his room. Pulido told an officer that he saw defendant jump over the fence. Soto's seven-year-old son, who witnessed the stabbing, later told an officer that defendant ran and jumped over the fence.

West Sacramento Police Officers Roger Kinney, Chris Cobb, Jerry Watson, and Lindsey Lamb responded to 420 Washington Avenue and set up a perimeter. Police helicopter support arrived within five minutes. For about 10 minutes, over the public address (PA) systems of the helicopter and police cars, announcements in English were made that anyone hiding should come out and surrender. When no one surrendered, an officer and his canine searched yard to yard. After about 30 to 40 minutes, the canine found defendant hiding behind a tree in the yard of 418 Washington Avenue. When the canine bit defendant on his arm and started pulling him away from the tree, defendant surrendered, yelling "okay, okay."

At the hospital, an officer interviewed defendant in English for about 20 to 30 minutes. Defendant never indicated he did not understand English, did not ask for a Spanish translator, and gave appropriate answers to questions.

2

## DISCUSSION

### I.

### *Failure to Respond to Police Instructions*

Defendant contends there is no evidence that he committed an act "which delayed or obstructed the police investigation *after* the officers arrived on the scene." Instead of delaying or obstructing, he did "nothing whatsoever" and "passively stayed seated behind a tree." Defendant claims that cases interpreting Penal Code section 148[1] "appear to require" that his actions or words occurred "after an actual encounter with a peace officer." Citing *People v. Quiroga* (1993) 16 Cal.App.4th 961 (*Quiroga*), defendant argues that simple noncompliance with police orders is not criminalized. We reject defendant's contention.

"When a defendant challenges the sufficiency of the evidence, ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.] ' [Citation.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

Section 148, subdivision (a)(1) provides: "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office" is guilty of a misdemeanor.

---

[1] Undesignated statutory references are to the Penal Code.

"The legal elements of [a violation of section 148, subdivision (a)(1)] are as follows: ' "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." ' [Citation.]" (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894-895; *People v. Simons* (1996) 42 Cal.App.4th 1100, 1108-1109.) "Section 148 is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148." (*In re Muhammed C*. (2002) 95 Cal.App.4th 1325, 1329; see also *People v. Allen* (1980) 109 Cal.App.3d 981, 986-987.)

Here, defendant does not dispute that the evidence was sufficient to show that the officers were engaged in the performance of their duties and that he knew they were peace officers engaged in the performance of their duties. He challenges only the first element, that is, whether he willfully resisted, delayed, or obstructed the peace officers by hiding and refusing to surrender.

In *Quiroga, supra*, 16 Cal.App.4th 961, the defendant challenged the sufficiency of the evidence to support his conviction for violating section 148. The defendant's conduct occurred both prearrest and postarrest. *Quiroga* held that the prearrest conduct did not support his conviction but that his postarrest conduct did. (*Id.* at pp. 966-972.) The prearrest conduct occurred when an officer entered an apartment without a warrant and the defendant demanded that the officer leave. After arguing with the officer about his order to sit down on a sofa, the defendant finally complied. When ordered to put his hands on his lap, the defendant argued with the officer but finally complied. When the officer ordered the defendant to then stand up, the defendant refused several times but finally stood up when the officer pulled on the defendant's arm. (*Id.* at p. 964.) *Quiroga* determined that the defendant's eventual compliance with the officer's orders was not in

4

violation of the law, stating that section 148 does not criminalize "a person's failure to respond with alacrity to police orders." (*Id.* at p. 966.) *Quiroga* noted that the defendant also had the right to dispute the officer's action. (*Ibid.*)

Here, unlike the defendant in *Quiroga*, defendant did not comply or even respond. After stabbing the victim, defendant fled. The police were summoned and set up a perimeter. Helicopter support arrived. From the helicopter and police cars, announcements over the PA systems were made in English that anyone hiding should come out and surrender. The announcements would have made it clear to defendant that the officers wanted to talk to him. Defendant understood English as evidenced by his appropriate responses during the subsequent interview. Defendant did not surrender in response to the announcements. Thereafter, an officer and his canine searched yard to yard. Defendant still did not surrender. After about 40 minutes, the canine found defendant hiding behind a tree. Defendant still did not surrender. Only after the canine bit defendant on his arm and started pulling him away from the tree did defendant surrender. It was reasonable to infer from defendant's lack of response to police orders, via announcements to come out and surrender, that he was attempting to hide and had no intention of revealing his location. The jury could reasonably infer that defendant willfully delayed and obstructed the officers by his action of hiding and refusing to surrender for a substantial period of time. Here, an actual encounter with an officer before hiding and refusing to surrender is not required. Defendant delayed and obstructed the officers as effectively as if he had fled when the officers approached him or physically struggled with them. (See *Quiroga, supra*, 16 Cal.App.4th at p. 972 [the defendant's refusal to disclose his identity at the booking interview amounted to resisting, delaying and obstructing the police officer].) We conclude sufficient evidence supports defendant's conviction for violating section 148.

5

## II.

### *Unanimity Instruction*

Defendant contends the trial court failed to instruct the jury on unanimity with respect to the resisting, delaying, or obstructing, in that there were "two distinct ways" in which the jury could have convicted him of the offense. We conclude that the trial court did not err.

"Defendants in criminal cases have a constitutional right to a unanimous jury verdict. [Citation.] From this constitutional principle, courts have derived the requirement that if one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' [Citation.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114 (*Napoles*), orig. italics.) The prosecutor may make an election in his statements and argument to the jury. (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418.) Even in the absence of a request, a unanimity instruction "must be given sua sponte where the evidence adduced at trial shows more than one act was committed which could constitute the charged offense, and the prosecutor has not relied on any single such act." (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274-275.)

"[N]o unanimity instruction is required [however] where the acts proved constitute a continuous course of conduct. [Citation.] ' "This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time. [Citation] . . . ." ' " (*Napoles, supra*, 104 Cal.App.4th at p. 115.)

Here, the first exception applies. The information alleged that defendant violated section 148, subdivision (a)(1) in that defendant "did willfully and unlawfully resist,

6

delay or obstruct any peace officer in the discharge of and in the attempt to discharge a duty of said person's employment and office." The jury was instructed that the People were required to prove that Kinney, Cobb, Watson, and Lamb were peace officers lawfully performing or attempting to perform their duties; that defendant willfully resisted, obstructed, or delayed the officers in the performance or attempted performance of those duties; and when defendant acted, he knew, or reasonably should have known, that the officers were peace officers performing, or attempting to perform, their duties.

Defendant argues that some jurors may have found that he committed the offense when he did not respond to the announcements to surrender and others may have found he violated the statute by sitting behind the tree, hiding from the officers. We reject this argument. The evidence does not support defendant's characterization of the incident as reflecting "two distinct ways" in which he violated section 148, nor did the prosecutor argue to the jury that there were two distinct ways.

Officers Kinney, Cobb, Watson, and Lamb, testified that they were on the scene searching for defendant who failed to surrender and hid for about an hour. The prosecutor argued that defendant's inaction obstructed and delayed the officers in performance of their duties to interview witnesses to the stabbing and to respond to other calls. Defense counsel drew no distinction either, arguing instead that defendant did not run from the officers. Defense counsel also argued that there could have been a "language barrier," the announcements may not have been "clear," and defendant may have not heard the announcements.

Here, the evidence and the argument presented a continuous course of conduct by which defendant obstructed and delayed Officers Kinney, Cobb, Watson and Lamb. Accordingly, the trial court did not err in failing to give a unanimity instruction on the charge of resisting, delaying or obstructing a peace officer.

III.

*Calculation of Conduct Credits*

We note an error in the calculation of conduct credits. The trial court awarded 37 actual days and 36 conduct days pursuant to section 4019 for a total of 73 days of presentence custody credit. The jury found that in the commission of the assault offense defendant inflicted great bodily injury (§ 12022.7), a violent felony within the meaning of section 667.5, subdivision (c)(8). Thus, defendant was entitled to only 15 percent conduct credit, or five days, pursuant to section 2933.1. We will modify the judgment accordingly. The miscalculation of conduct credits resulted in an unauthorized sentence which may be corrected at any time even in the absence of an objection by the People below. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [no waiver of "mandatory provisions governing the length of confinement"].)

**DISPOSITION**

The judgment is modified to provide for five days of conduct credit for a total of 42 days of presentence custody credit. The trial court is directed to prepare an amended abstract of judgment accordingly and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

                                  RENNER             , J.

We concur:

BLEASE            , Acting P. J.

HULL              , J.