Filed 11/10/21  P. v. Ballard CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Modoc)

----

| | |
|---|---|
| THE PEOPLE, | C091124 |
| Plaintiff and Respondent, | (Super. Ct. No. F-19-050) |
| v. | |
| PETER JOSEPH BALLARD, | |
| Defendant and Appellant. | |

Defendant Peter Joseph Ballard appeals a judgment entered following his conviction for being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a))[1] and driving a U-Haul truck without consent (Veh. Code, § 10851, subd. (a)) while out on bail (§ 12022.1).  He contends the trial court erred in failing to sua sponte provide a unanimity instruction on the possession count.  He reasons because the trial involved

---

[1]  Further undesignated statutory references are to the Penal Code.

1

evidence of two separate alleged possessions of firearms, the trial court's failure to provide a unanimity instruction lowered the prosecution's burden of proof requiring reversal. We conclude there was no error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We limit this discussion given defendant's issue on appeal. The People's first amended information alleged that "[o]n or about January 27, 2019," defendant illegally possessed a firearm (§ 29800, subd. (a); count one); that "[o]n or about January 29, 2019," defendant possessed a billy (§ 22210; count two);[2] and that "on or about April 11, 2019," defendant drove a U-Haul rental truck without consent (Veh. Code, § 10851, subd. (a); count three). The amended information also alleged that count three occurred while defendant was out on bail (§ 12022.1).

Relevant to the firearm charge, the People presented evidence that on January 27, 2019, defendant brought a black .45-caliber semiautomatic pistol to Tommy G.'s home. Defendant said he had received the gun from a friend who owed him money and asked to put the gun in Tommy G.'s safe, which Tommy G. did. This interaction was captured on Tommy G.'s home security camera and showed defendant bringing the weapon into Tommy G.'s home and handing the .45-caliber pistol to Tommy G. Tommy G. denied that defendant had handed him a $CO_2$ pistol. This footage was played for the jury and had a date stamp of January 27, 2019.

Also on January 27, 2019, Erin W. came home and discovered the backdoor open and his Rock Island 1911 .45-caliber pistol missing from the lockbox where he kept it in his bedroom. Erin W. reported the theft to law enforcement that very day. At the time, he lived with his then girlfriend, Chassie B.

---

[2] Count two was dismissed during the trial once it was learned that the "billy" in question was actually a "fish knocker" for clubbing fish and was the personal property of Chassie B.

On January 29, 2019, defendant told Tommy G. he had something to show him. Defendant went into his trailer and retrieved a green firearm with an extended threaded barrel. He asked Tommy G. to put the gun in his safe. Tommy G. took the gun after defendant explained he had purchased the gun for $500.

Later that day, Tommy G.'s fiancée received an alert for a posting on her phone from Chassie B. (who had an on-again, off-again relationship with defendant). This post warned Chassie's home had been broken into and weapons stolen. Tommy G. suspected the gun defendant gave him on January 27 might be stolen. He followed up, taking the gun to Chassie B. and Erin W.'s home. Officer Chris Harrison was dispatched to that home where he met Tommy G., Chassie B., and Erin W. The serial number on the gun Tommy G. brought matched the gun that had been reported stolen. The gun was a Rock Island 1911 .45-caliber pistol, and Tommy G. reported defendant had given it to him.[3] Tommy G. denied that he wanted to get defendant arrested because of a prior disagreement or that he owed defendant money, swearing they were friends up until defendant's arrest.

Around 11:50 p.m. the same night, Officer Harrison responded to a disturbance call at the trailer park where Tommy G. and defendant lived. Defendant was at Tommy G.'s space and had been banging on Tommy G.'s door. Officer Harrison detained him and confirmed he was unarmed. Officer Harrison then viewed Tommy G.'s security footage from January 27. Defendant denied that he had recently possessed a firearm, persisting in that denial even after Officer Harrison told him about the security footage. Defendant was arrested that night.

---

[3] Tommy G. identified the 1911 Rock Island .45-caliber pistol in evidence as the gun defendant had given him on January 27. Likewise, Erin W. identified that gun as his stolen firearm. He had purchased and installed special grips on the firearm which helped him to identify it.

At the jail, Sergeant Marc Muller interviewed defendant concerning his alleged firearm possession. Defendant explained he helped Tommy G. sell drugs, and Tommy G. would give him firearms. Defendant admitted he had taken two guns from Tommy G. to sell for him, which he said he kept for one day, hidden in a tree in his yard. Defendant had found a buyer for them for $500 and not the $600 Tommy G. wanted. Defendant then returned the guns to Tommy G.

In his defense, defendant called his ex-girlfriend Chassie B. She testified that defendant had loaned Tommy G. money, but Tommy had not paid the money back. On January 29, 2019, Chassie B. posted about the theft of her gun on Facebook, and Tommy G. came over with the gun. Tommy G. told Chassie B. not to call defendant and instead to call the police so that defendant would go to prison. Tommy G. said he had kept the gun to make sure defendant went to prison and did not know that the gun belonged to Chassie B.

Defendant testified to a falling out with Tommy G. about a year before and that Tommy G. owed him money. Defendant denied the security footage showed him holding a gun. Rather, Tommy G. wanted to show him new sights on a $CO_2$ pistol and had asked defendant to hand the pistol to him. Defendant denied that the security footage showed him walking into Tommy G.'s home with a gun.

Defendant denied taking firearms from Tommy G. to find buyers, denied hiding firearms in his tree, and complained investigators were putting words in his mouth. However, when confronted that his statements to authorities had been recorded, defendant ultimately conceded, "If that's what it says then that's probably what I told him," and, "[I]f that's what you got down there, then I'll say yeah." Defendant denied stealing the gun and alleged that he was with Chassie B. when the theft was discovered.

In rebuttal, Sergeant Muller testified that he had recorded his interview with defendant, that defendant had told him that Tommy G. had given him two .45-caliber

4

pistols, and that defendant had hidden the handguns in a tree in his yard. Defendant's statements regarding the guns were consistent throughout the interview.

Following the close of evidence relevant to the firearm possession count, the trial court instructed the jury: "Possession of a firearm by a person prohibited due to conviction. The Defendant is charged in Count 1 with unlawfully possessing a firearm, in violation of Penal Code section 29800[, subdivision ](a). [¶] To prove the Defendant guilty of this crime the People must prove that, one, the Defendant possessed a firearm. [¶] Two, the Defendant knew that he possessed a firearm. [¶] And three, the Defendant had previously been convicted of a felony. [¶] The third element has been established by stipulation already. [¶] . . . [¶] The People allege that the Defendant possessed the following firearms: A .45 Rock Island 1911 handgun."

The court also instructed the jury on a defense to the possession charge: "Defense, momentary possession. If you conclude the Defendant possessed the firearm, that possession was not unlawful if the Defendant can prove the defense of momentary possession. [¶] In order to establish this defense, the Defendant must prove that, one, he possessed the firearm only for a momentary or transitory period; he possessed the firearm in order to abandon it, dispose of it, or destroy it; and he did not intend to prevent law enforcement officials from seizing the firearm."

The closing arguments of the parties focused on whether defendant actually possessed a gun. The People presented two factual scenarios either: (1) defendant gave Tommy G. a black Rock Island 1911 .45-caliber handgun on January 27 as shown in the video and consistent with the evidence; or (2) as defendant told authorities, defendant had the guns because he had obtained them from Tommy G. Under either scenario, the evidence established that defendant was a felon in possession of a firearm.

Defendant argued the gun in the video was a $CO_2$ pistol and that even if it had been an actual firearm, his possession of it was only transitory to take it from Tommy G.'s safe to hand it to Tommy G. He reasoned because the gun in the video was only a

5

CO$_2$ pistol, there was no evidence to corroborate defendant's statements to authorities. Finally, defendant argued that Tommy G. had tricked defendant into doing what was captured on the video and that the video did not show defendant entering Tommy G.'s home with a gun.

In rebuttal, the People stressed that the elements of momentary or transitory possession had not been established because defendant did not possess the gun "in order to abandon, dispose of, or destroy it." Further, the People urged the jury to review the video and see that the gun did not have an orange tip that would be present on a CO$_2$ pistol. Rather, the video showed defendant handing Tommy G. the black Rock Island 1911 .45-caliber pistol. Finally, defendant's trial testimony was inconsistent with his statements to authorities and was fabricated in the time leading up to trial.

The jury convicted defendant of counts one and three. Following a bifurcated proceeding, the trial court found the out-on-bail enhancement true. On November 19, 2019, the trial court sentenced defendant to an aggregate prison term of four years eight months, comprised of two years for the possession count, a consecutive eight months for driving without consent, and two years for the out-on-bail enhancement. The court awarded 123 days actual credit plus 123 days conduct credit for a total of 246 days custody credit. Defendant timely appealed.

**DISCUSSION**

Defendant argues the trial court prejudicially erred by failing to sua sponte instruct the jury on unanimity. He reasons that because the prosecution presented evidence of two separate instances of alleged possession of firearms for which he had separate defenses, a unanimity instruction was required. We disagree. The People elected to prosecute defendant's possession of the black Rock Island 1911 pistol and the varying circumstances surrounding how he might have come to possess that gun did not require a unanimity instruction.

6

The jury must unanimously agree a defendant is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.] [¶] This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Ibid*.) To ensure juror unanimity, a prosecutor may use an opening statement or closing argument to elect a specific instance of the charged offense. (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418-419; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1452-1455.) If the prosecutor does not make an election, the court has a sua sponte duty to instruct on unanimity. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534.)

Here, the information alleged that "[o]n or about January 27, 2019," defendant illegally possessed a firearm. At trial, the People presented testimony that on January 27, defendant brought a black .45-caliber semiautomatic pistol to Tommy G.'s home and asked Tommy G. to store the gun in his safe, which he did. This interaction was captured on Tommy G.'s home surveillance system and a recording of that video was played for the jury. It showed defendant bringing the weapon into Tommy G.'s home and handing the .45-caliber pistol to Tommy G. Thereafter, Tommy G. returned the gun to its rightful owner, Erin W., as confirmed by a firearm records search. The gun was a Rock Island 1911 .45-caliber pistol, and the actual firearm was an exhibit to the trial, identified by both Tommy G. and Erin W.

Defendant's own statements to authorities conceded he took possession of the guns from Tommy G. for the purpose of finding a buyer for them, but explained that he had given them back to Tommy G. Defendant also admitted in his trial testimony that he probably made those statements, stating: "If that's what it says then that's probably what I told him," and, "[I]f that's what you got down there, then I'll say yeah." Nonetheless,

7

defendant denied bringing a gun to Tommy G.'s home and testified that the gun in the video was actually a $CO_2$ pistol.

The trial court instructed the jury on the elements that must be established to find defendant was a felon in possession of a firearm, including that "The People allege that the Defendant possessed the following firearms:  A .45 Rock Island 1911 handgun."

Consistent with the information, evidence presented, and instructions to the jury, we conclude the People elected to prosecute defendant for possessing the black Rock Island 1911 .45-caliber handgun in evidence.  In closing, the People argued that the evidence established that defendant gave Tommy G. a black Rock Island 1911 .45-caliber handgun on January 27, as shown in the video and consistent with the evidence.[4]  While defendant's statements to authorities differed regarding how he came to possess that gun, stating it originally came from Tommy G.,[5] in contrast with the People's theory that it was defendant who first gave the firearm to Tommy G., this does not change that possession of that firearm was the crux of the People's case.  Based on this record, no unanimity instruction was required.  (See *People v. Russo, supra*, 25 Cal.4th at p. 1135 [court need not provide unanimity instruction if "the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime"].)  We conclude the trial court did not err in declining to

---

[4]  The People only mentioned Tommy G.'s testimony regarding the January 29, 2019, gun in reference to why Tommy G. became suspicious of defendant.  The People did not argue defendant's possession of that firearm, which was not in evidence, showed defendant had violated the law as alleged in count one.  Nor was it mentioned in defendant's closing.

[5]  There was no indication that defendant's statements concerning the two .45-caliber handguns obtained from Tommy G. pertained to any guns but the Rock Island 1911 .45-caliber pistol and green extended barrel gun that Tommy G. had reported to authorities prior to defendant's arrest and questioning by authorities.

instruct the jury on unanimity.  (*People v. Mayer, supra*, 108 Cal.App.4th at pp. 418-419;

*People v. Hawkins, supra*, 98 Cal.App.4th at pp. 1452-1455.)

## DISPOSITION

The judgment is affirmed.


/s/
HOCH, J.


We concur:


/s/
MAURO, Acting P. J.


/s/
KRAUSE, J.