Filed 7/26/22 P. v. Baggett CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY ALBERT BAGGETT,<br><br>    Defendant and Appellant. | F081289<br><br>(Super. Ct. No. 18CR-04077) |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County. Carol K. Ash, Judge.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Peter H. Smith, Brook A. Bennigson, and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A jury convicted defendant Anthony Albert Baggett of failing to register as a sex offender with the City of Merced within five days of becoming transient. The trial court struck one of defendant's serious and violent prior convictions and sentenced defendant to double the upper term of three years, for a total of six years in prison.

Defendant contends on appeal that (1) the trial court deprived him of the right to a unanimous jury verdict by failing to sua sponte instruct the jurors that they had to agree on the same criminal act or acts, (2) the trial court violated due process by failing to determine defendant's ability to pay before imposing fines, fees, and assessments, (3) counsel was ineffective in failing to object to the imposition of fines, fees, and assessments without a hearing on defendant's ability to pay, (4) the trial court erred in failing to impose sentence on count 2, and (5) defendant is entitled to be resentenced under new legislation that took effect on January 1, 2022.[1]

We remand for resentencing in light of the trial court's failure to impose sentence on count 2 and recently enacted sentencing legislation that is retroactive to defendant's case. Because we remand this case for resentencing, we need not address defendant's claims of error regarding the imposition of fines as defendant may raise these claims in the trial court on remand. In all other respects, we affirm the judgment.

**PROCEDURAL BACKGROUND**

Originally charged by complaint, defendant was held to answer after a preliminary hearing on October 10, 2018. The District Attorney of Merced County filed an information charging defendant with failing to reregister as a sex offender[2] upon

---

[1]     Defendant also argued that the trial court incorrectly calculated his custody credits but has withdrawn the argument in light of the trial court's March 26, 2021 amended abstract of judgment.

[2]     The information alleged defendant had been convicted of lewd and lascivious conduct with a child (Pen. Code, § 288, subd. (a)) and sexual battery (Pen. Code, § 243.4, subd. (a)) in 2005.

2.

becoming transient (Pen. Code,[3] § 290.011, subd. (b); count 1) and misdemeanor resisting a public peace officer (§ 148, subd. (a)(1); count 2). As to count 1, the information alleged two prior "strike" convictions[4] within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and three prior prison terms (former § 667.5, subd. (b)).[5]

Upon motion of defendant's counsel, on October 25, 2018, the trial court suspended criminal proceedings and appointed an expert to determine defendant's competency to stand trial pursuant to section 1368. The court received the report of defendant's mental evaluation on January 10, 2019, found defendant not competent to stand trial, and committed defendant to the State Department of State Hospitals. On June 19, 2019, the trial court found defendant competent to stand trial and resumed criminal proceedings. Defendant pleaded not guilty to the charges and denied all allegations in the original information.

Defendant pleaded no contest to count 2 on the second day of trial on January 9, 2020. After a three-day trial, on January 10, 2020, the jury convicted defendant of failing to register as a sex offender five days after becoming transient (§ 290.011, subd. (b)); defendant admitted the two prior serious and violent felony conviction allegations (enhancements 1 & 2), and one prior felony prison term allegation (enhancement 3).[6]

---

[3]     All further statutory references are to the Penal Code unless otherwise indicated.

[4]     The information alleged defendant was convicted of robbery (§ 211) in 1993 (enhancement 1) and the 2005 convictions for lewd and lascivious conduct with a child and sexual battery (§§ 288, subd. (a), 243.4, subd. (a)) (enhancement 2).

[5]     The information alleged defendant served prior prison terms for 2005 felony sexual offenses (enhancement 3), a 2016 felony conviction for failure to annually register as a transient sexual offender in violation of section 290.011, subdivision (c) (enhancement 4), and a 2017 felony conviction for failure to register as a transient sexual offender in violation of section 290.011, subdivision (a) (enhancement 5).

[6]     Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5, subdivision (b) to limit application of prior prison term enhancements to only prior prison terms that were served for sexually violent offenses as defined by Welfare and Institutions

On June 9, 2020, the trial court granted defendant's motion to strike his prior serious and violent felony conviction for robbery (enhancement 1) pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504, and the remaining prior felony prison term enhancement (former § 667.5, subd. (b); enhancement 3). The trial court sentenced defendant to a six-year term in prison as to count 1 (twice the upper term per § 667, subd. (e)) but failed to pronounce any sentence as to count 2. In addition, the trial court imposed a $1,800 restitution fine (former § 1202.4), a suspended $1,800 parole revocation restitution fine (§ 1202.45), a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court operations assessment (§ 1465.8).

This timely appeal followed on June 11, 2020.

## FACTS

Detective Kalvin Haywood testified that he was one of two detectives for the Merced Police Department responsible for registering sexual offenders within the department's jurisdiction. The State of California requires sexual offenders to register their residence within the county or city where they are residing. A sexual offender is required to initially register their residence and then reregister annually. A sexual offender who is transient and without a regular residence must register as such and update their registration every 30 days. If a sexual offender has registered their residence but later becomes transient, the offender is required to update his status as transient within five working days. In addition, if an offender is incarcerated for more than 30 days, they must register within five business days of release from custody.

An individual required to register will make an appointment at the police department. The detective will access the California Sex and Arson Registry website

Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.) Only one of defendant's prior prison terms qualifies under amended section 667.5 and, therefore, the trial court granted the prosecutor's motion to dismiss the other two prior felony prison term allegations (enhancements 4 & 5).

4.

maintained by the Department of Justice and search for the individual's information, print a prepopulated registration form, review the form with the individual, and then have the individual complete the form. The form contains a list of the reporting advisements, including the obligation to update their status to transient, and the individual is required to initial each advisement. The detective then applies the individual's thumbprint to the form, inputs the updated information into the computer database, uploads a copy of the form into the police system, and then locks the completed form in a secured file cabinet. The information is accessible to other law enforcement officers who either contact the registering detectives or obtain the information from dispatch.

According to certified records, in 2005, defendant was convicted of lewd and lascivious conduct on a child (§ 288, subd. (a)) and sexual battery (§ 243.4, subd. (a)). On March 27, 2018, defendant registered with the Merced Police Department as a sexual offender and provided his address as an apartment in Merced.[7] He had previously registered as transient on February 21, 2018, after having been released from custody on February 16, 2018. Between July 2007 and April 18, 2019, defendant registered as a sex offender approximately 44 or 45 times. Of those times, defendant registered as transient 26 times.

Merced Police Officer Nicholas DeJong testified that he had been so employed for 13 years and was assigned to patrol. On August 1, 2018, DeJong conducted an investigation regarding defendant's section 290 registration. Earlier that summer, DeJong had contact with defendant approximately eight to 10 times. At the beginning of July 2018, DeJong responded to a call at a grocery store where he contacted defendant. After identifying defendant, DeJong determined that defendant was a section 290 registrant and ascertained the apartment defendant registered as his residence. DeJong asked defendant if he was still residing at that apartment and defendant responded that he

---

[7]     Defendant had previously registered at this same address on July 19, 2012.

was in between places and was "working on something" but registered at that apartment. At that time, DeJong reminded defendant that he needed to register as transient within five days of becoming transient and every 30 days thereafter.

DeJong had observed defendant several times throughout that summer. One such time, DeJong observed defendant sleeping in a parking lot, surrounded by a large amount of personal property that one person could not carry at one time. The property he observed included a bedroll and a large and broken flat-screen television. During these other contacts, DeJong observed that defendant was always in the same area outside, carried a substantial number of personal belongings, and had accumulated a large amount of personal property.

DeJong obtained a copy of defendant's section 290 registration on August 1, 2018. He then visited the apartment to which defendant had registered, but no one answered his knock. DeJong spoke with H.C., the occupant of an apartment across from defendant's registered apartment. H.C. did not identify defendant as living across from him.

DeJong located defendant at a restaurant parking lot. Defendant saw the officer and walked away from him. DeJong activated his emergency lights and asked defendant to stop. Defendant quickened his pace as he walked away. Defendant began to run after the officer turned his patrol car around and DeJong chased defendant on foot. He apprehended defendant and DeJong's conversation with defendant was recorded by his body camera. The video was introduced into evidence, played to the jury, and included the following exchange:

"[DeJong]: Yeah. Where do you live?

"[Defendant]: I live in Merced City. I am registered ….

"[DeJong]: Yeah. You're transient.

"[Defendant]: No. I am registered to an apartment. And I am also finding another place to live out here. I've been looking for a place.

6.

"[DeJong]: But you haven't lived at that apartment for a while.

"[Defendant]: And I just got out of jail. … [¶] …

"[DeJong]: You haven't registered as transient. You have five days.

"[Defendant]: You don't have to register as transient if .…

"[DeJong]: You don't live at that address. I talked to the people there. You don't live there.

"[Defendant]: The butler .…[8]

"[DeJong]: Yep.

"[Defendant]: Man.

"[DeJong]: Yep. You told me a month ago that you were in between places and looking.

"[Defendant]: I was .…

"[DeJong]: You told me a month ago at the [grocery store].

"[Defendant]: I was trying to find a place out here since I got out of jail.

"[DeJong]: But you have to register within five days .…

"[Defendant]: Ok, but[,] wanting to live somewhere else, I have a right to find some other place to live.

"[DeJong]: You have to register as a deviant sex registrant here in our city if you are transient. You do not live there. That is not your residence. Just because they let you put the address down does not mean that that's where you live. We need to keep track of you because of your history.

"[Defendant]: I'm out here in this city, Jong."

R.D. was the building manager for the apartment listed on defendant's section 290 registration and was present at that location approximately three or four times a week for up to an hour. One of her responsibilities included renting the apartments and from this,

---

**8** Defendant testified that " 'the Butler' " was the nickname he gave to W.C., the individual who lived at the apartment before L.S. and with whom he previously lived.

R.D. knew all the tenants. L.S. was the current tenant for defendant's registered residence and had moved into the apartment in January 2018. L.S. provided R.D. a letter that he received, which she provided directly to the district attorney's office.

Only the individuals listed on the lease are permitted to reside there, but if a tenant wishes to add a roommate, the tenant can fill out an application for that individual and receive permission. She had never rented an apartment to defendant. R.D. was familiar with defendant from her work at a homeless camp several years prior but had not seen him at her apartment complex.

L.S. testified that he lived at the apartment listed on defendant's section 290 registration and moved into it in January 2018. L.S. did not know defendant and did not recognize him in court. Defendant never lived in L.S.'s apartment. In November 2019, L.S. received a letter that was addressed to " 'Sir in residence' " and indicating a return address with defendant's name.[9] He then provided the letter to R.D. The letter requested that L.S. call the attorney of the letter's author and explain that L.S. gave the letter's author a place to live in February 2018.[10] L.S. testified that he never gave defendant a place to live in February 2018. Referring to the letter, the prosecutor asked L.S. if anyone was living in his apartment whom he last saw on July 29, 2018, and L.S. replied, "Nobody was living in my apartment, no." L.S. further testified, referring to the letter, that no one had moved out of his apartment on that date or thanked him, he did not let anyone stay at his apartment between some day in February to July 29, 2018, and no one slept on his apartment floor with a blanket or kept their clothes in a duffle bag there. L.S.

---

**9**    The letter also referred to its author as "Buoyant," a nickname defendant testified he used to refer to himself.

**10**    The letter is not part of the record on appeal, but the prosecutor's questions indicated that it was authored by defendant and referred to an attorney named Jonathan Richter at a particular telephone number. According to the court record, Richter was defendant's attorney.

never encountered anyone outside his apartment complex who requested to be his roommate.

The prosecutor introduced into evidence certified copies of minute orders showing defendant's entry of plea to failure to register transient status (§ 290.011, subd. (a)) on November 1, 2017, defendant's entry of plea to failure to register transient status annually (§ 290.011, subd. (c)) on May 23, 2016, and defendant's entry of plea to failure to register transient status (§ 290.011, subd. (a)) on May 23, 2016.

Defendant testified that he was required to register as a sex offender and had registered more than 40 times in the last 10 years. L.S. lied when he denied having met defendant because defendant met L.S. in 2018 after defendant was released from jail. Defendant previously lived with W.C. at the apartment where L.S. now lived. In March 2018, defendant went to the apartment and learned that W.C. no longer lived there when L.S. answered the door. Defendant advised L.S. that he used to live there and asked L.S. if L.S. needed a roommate. L.S. told defendant that defendant could stay at the apartment. Defendant only went to the apartment "to sleep, which wasn't that much a week." Defendant estimated that he was at L.S.'s apartment twice a week and looked for acquaintances who would allow him to stay one night for the rest of the week.

Defendant testified that he was aware of his registration responsibilities and carefully read the forms because the law changed often. When defendant first encountered DeJong, he told DeJong that he had a place to live but was not going home because he was roaming the streets getting high. Defendant advised DeJong that he had a place to live, referring to the apartment, and that he lived there but was trying to find another place to live. While defendant admitted that he had told DeJong that he was "between residences," defendant actually still lived at the apartment and had not told L.S. that he would not be returning. Defendant did not consider himself to be homeless but "[s]ometimes [he] wouldn't even go home" because he would visit and spend time at the homes of other people who were using drugs.

9.

Defendant testified that he was released from jail again on July 28, 2018, and only at that time did he decide not to return to L.S.'s apartment. Defendant understood that he had five days after July 28, 2018, to register with the city once he decided not to return to the apartment.

Defendant admitted that he wrote the letter to L.S. and referred to him as " 'Sir in Residence' " because he did not know L.S.'s name as he had heard it only one time. Defendant asked for L.S. to tell the truth that he had allowed defendant to stay at the apartment. Defendant's statements in the letter were not an attempt to solicit L.S. to lie but served only to remind L.S. as to what had happened because L.S. was old.

Defendant testified that DeJong was correct that when he saw defendant, defendant did have a duffle bag with a blanket rolled up and tucked under the handle. However, during the period he saw DeJong, defendant did not sleep on the streets and went to the apartment "a couple times out of [a] week."

Defendant testified that he decided on July 28, 2018, not to return to the apartment to live, told L.S. that he would not be living there, and thanked him for the days that he had been allowed to stay there. Defendant also testified that he had slept at the apartment as of July 16, 2018.

## DISCUSSION

### I.    *The trial court did not err in failing to sua sponte instruct the jury on unanimity.*

#### A.    Background

The information alleged that "[o]n or about August 1, 2018, [defendant]… was registered at a residence but failed to reregister within five working days of becoming homeless/transient." During the jury instruction conference, defense counsel requested that the verdict form specifically include the date alleged in the information. The trial court noted, "Okay. And I would agree with that. Since it does span a period of time, but

10.

it wasn't charged that way, and that was more the focus of the evidence was August 1st. Otherwise, I think I would have to give a unanimity instruction."

The trial court instructed the jury:

> "[T]he People must prove that: One, the defendant was previously convicted of PC—Penal Code 288(a) and PC 243.4; two, the defendant resided in Merced, California; three, the defendant actually knew he had a duty under Penal Code Section 290 to register as a sex offender and that he had to register within five working days of becoming transient; and, four, the defendant willfully failed to register as a sex offender with the police chief of that city within five working days of becoming transient."

Defendant argues that the trial court erred in failing to sua sponte instruct the jury as to the need for unanimity regarding the specific act that constituted the crime. We reject defendant's argument.

## B.     Standard of Review and Applicable Law

"Unanimity in jury verdicts is required where the Sixth … Amendment[]appl[ies]." (*Andres v. United States* (1948) 333 U.S. 740, 748 ["In criminal cases this requirement of unanimity extends to all issues—character or degree of the crime, guilt and punishment—which are left to the jury."].) The United States Supreme Court held in 2020 that the Sixth Amendment's right to a unanimous jury applies to state criminal trials through the Fourteenth Amendment. (*Ramos v. Louisiana* (2020) 590 U.S. __, __ [140 S.Ct. 1390, 1397] ["So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court."].)

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); see Cal. Const., art. I, § 16.) "Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime." (*Russo*, at p. 1132.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.) "When the prosecutor does not make an

11.

election, the trial court has a sua sponte duty to instruct the jury on unanimity." (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418.) " 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' " (*Russo*, at p. 1132.)

Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

### C. Analysis

Defendant argues that the evidence allowed the jury to convict "based on [defendant]'s failure to register at different times, months apart." To support the argument, defendant points to the prosecutor's closing argument in which he argued that defendant's registration at the apartment "was a lie" and he was "out of compliance on that date," referring to March 2018. The prosecutor also argued, "[Defendant] was out of compliance with his sex registration requirement just after he registered falsely to the [apartment] in March 2018, and he continued to be out of compliance with his sex registration requirements all of the way up until he was arrested on August 1st." Defendant argues that the evidence and the prosecutor's argument, therefore, permitted a jury to convict if some jurors believed he failed "to register as a transient within five days on August 1, or whether one or more jurors found [defendant] had failed to register for five days or more after becoming transient on August 1, while other jurors found [defendant] guilty based on his failing to register as transient in March, or at some other time after March, but before July when he went into custody."

"[T]he unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories

12.

or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Russo*, *supra*, 25 Cal.4th at p. 1135.)

Section 290.011, subdivision (b) provides that a person registered pursuant to section 290 at a residence who becomes transient must register as such within five working days. Section 290.011 is a continuing offense. (§ 290.18, subd. (j); *Wright v. Superior Court* (1997) 15 Cal.4th 521, 525–526 [construing former § 290, subd. (f)(1), as amended by Stats. 2006, ch. 337, § 11, which required an individual to register a change of address within five working days].) " 'Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.' [Citations.] Thus, when the law imposes an affirmative obligation to act, the violation is *complete* at the first instance the elements are met. It is nevertheless not *completed* as long as the obligation remains unfulfilled." (*Wright*, at pp. 525–526.)

The evidence in this case demonstrated that defendant's last registration occurred in March 2018. Defendant had no duty to register thereafter unless he changed residences or became transient. There was no evidence that defendant changed residences multiple times or became transient multiple times after he registered in March 2018. There was evidence that defendant did not reside at the apartment at all and his March 2018 registration was false, and evidence that defendant admitted he was "between residences" when contacted by DeJong in July 2018. Such evidence merely presented the possibility that the jury might not agree as to *when* defendant became transient, but no unanimity instruction was needed just because the jury "may divide, or

be uncertain, as to the exact way the defendant is guilty of a single discrete crime." (*Russo*, *supra*, 25 Cal.4th at p. 1135.)

Our conclusion is supported by *People v. Meeks* (2004) 123 Cal.App.4th 695, wherein the court recognized that a defendant's failure to register as required by law is a continuing offense in that there is a continuing duty to satisfy registration requirements each time there is a triggering event which, in *Meeks*, was a birthday and a change of address. (*Meeks*, at p. 702.) The issue in that case was that Meeks was charged with both willfully failing to register a change of address (§ 290, subd. (a)(1)(A)) and failing to register annually on his birthday (§ 290, subd. (a)(1)(D)). He argued that because section 290 was a continuing offense, he could not be convicted for both registration failures. The court concluded, "Under section 290, a failure to register when one moves to a different residence is a continuing offense; a failure to register on the event of the defendant's birthday is a separate continuing offense. … [I]n this matter there are two separate offenses, the statute was violated in two different ways. Had the prosecution charged a separate offense for each day of defendant's failure to register when he changed his address, the defendant would then have been subjected improperly to multiple convictions for a single criminal act." (*Meeks*, at p. 703.)

Defendant's defense against the charge was that he did, in fact, reside at the apartment through July 28, 2018,[11] when he notified L.S. that he was no longer living in the apartment. If the jury believed defendant's testimony, defendant would have been

---

**11**     A sex offender has a separate duty to reregister within five working days of release if incarcerated 30 days or more. (§ 290.015, subd. (a).) Defendant testified that he was released from custody on July 28, 2018. However, contrary to defendant's argument, the jury could not have convicted defendant based upon a violation of this section because defendant was not charged with this offense, the jury was not instructed on this offense, the prosecutor did not argue this offense, and evidence would not support it as DeJong testified that he encountered defendant out of custody on July 16, 2018 so defendant would not have had an obligation to register under this section and, even had he been incarcerated 30 days, defendant's time to register would not have expired as of August 1, 2018.

obligated to register as transient as of August 2, 2018, the day after he was arrested and, therefore, he was not guilty of violating section 290.011, subdivision (b). Contrary to his argument, defendant was guilty of failing to register as transient if he was, in fact, no longer living at the apartment any time after his registration in March 2018 and more than five days before his arrest on August 1, 2018.

Defendant violated section 290.011, subdivision (b) by not registering five days after becoming transient and the violation continued until he was arrested for the violation on August 1, 2018. As such, between the time defendant registered as having a residence in March 2018 and was found transient on August 1, 2018, he committed only one discrete crime even though the jury might disagree as to when he became transient. Therefore, we conclude the trial court did not err in failing to provide the jury an unanimity instruction.

## II.     *The trial court erred in failing to sentence defendant as to count 2.*

Defendant pleaded no contest to count 2 on the second day of trial. However, the trial court failed to impose sentence on count 2. Defendant argues that we must remand this matter for sentencing as to count 2. The People agree, as do we.

The court had a duty to pronounce judgment on each count of which defendant was convicted. (*Hoffman v. Superior Court* (1981) 122 Cal.App.3d 715, 724.) The trial court only pronounced judgment as to count 1. Therefore, we must remand for the trial court to sentence defendant as to count 2.

## III.     *Resentencing under section 1170 amendments.*

### A.     Background

The probation officer's report and recommendation noted three aggravating factors: (1) defendant's prior convictions were numerous or of increasing seriousness; (2) defendant served a prior prison term; and (3) defendant's prior performance on

15.

probation or parole was unsatisfactory.[12]  In mitigation, the probation officer noted that defendant suffered from a mental or physical condition that significantly reduced his culpability for his crime.  The trial court agreed that defendant's aggravating factors included his prior convictions, violations of parole, and attempt to suborn perjury through his letter to L.S., as well as one mitigating factor based upon his mental condition.  The trial court then sentenced defendant to a six-year term in prison as to count 1 (twice the upper term per section 667, subd. (e)).

Effective January 1, 2022, Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5.3) (Assembly Bill 124) and Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567) amended section 1170 and made changes affecting trial court sentencing discretion, including the ability to impose the upper term for a conviction.  Among other things, Assembly Bill 124 also sets a presumption that the trial court will impose the lower term under enumerated circumstances, such as where an offender's childhood trauma or youth were contributing factors in the offense.  (§ 1170, subd. (b)(6); Stats. 2021, ch. 695, § 5.3.)  Senate Bill 567 limits the trial court's ability to impose the upper term unless certain conditions have been met.  (§ 1170, subd. (b)(1); Stats. 2021, ch. 731, § 1.3.)  In his supplemental brief, defendant argues this matter must be remanded for resentencing so the trial court may reconsider its sentencing decisions under the new legislation.  The People agree remand is required in this instance, as do we especially in light of our remand for sentencing as to count 2.

---

[12]     Defendant admitted he was previously convicted of robbery (§ 211) in 1993 (enhancement 1) and lewd and lascivious conduct with a child and sexual battery (§ § 288, subd. (a) & 243.4, subd. (a)) in 2005 (enhancement 2).  The prosecutor also submitted a certified copy of defendant's section 969b prison records that included information pertaining to defendant's prison commitments and return to custody due to parole revocations.

### B. Applicable Law

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) Nothing in Assembly Bill 124 or Senate Bill 567 suggests legislative intent that the amendments apply prospectively only, and defendant's case is not yet final. (*People v. Vieira* (2005) 35 Cal.4th 264, 306.)

Where an ameliorative statute like this one is retroactive, a remand is appropriate unless "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) There is no clear indication what sentencing decisions the trial court would have made if it was bound by the new requirements under Assembly Bill 124 and Senate Bill 567. Therefore, we agree with the parties that remand is appropriate so the trial court may fully resentence defendant anew, incorporating the new legislative changes. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

### IV. *Imposition of fines and fees without an ability to pay hearing.*

At sentencing, the trial court imposed a $1,800 restitution fine (§ 1202.4), a suspended $1,800 parole revocation restitution fine (§ 1202.45), a $30 criminal conviction assessment (Gov. Code, § 70373) and a $40 court operations assessment (§ 1465.8). Defendant argues the court failed to conduct an ability-to-pay hearing as to the fines and fees, and that we should strike them pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Given the remand for further proceedings that will require resentencing, we conclude it is unnecessary to reach defendant's *Dueñas* arguments; they are moot and defendant may raise them at resentencing.

## DISPOSITION

The sentence is vacated, and the matter is remanded to the trial court to resentence defendant under section 1170, as amended by Senate Bill 567 and Assembly Bill 124. The trial court must impose sentence on count 2 as well. Following resentencing, the trial court clerk shall prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

HILL, P. J.

WE CONCUR:

FRANSON, J.

SMITH, J.